**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ELMER LEE JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-CV-97 CAS/ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This Social Security matter was filed by pro se plaintiff Elmer Lee Jefferson ("plaintiff" or "Jefferson"). The case is before the Court pursuant to the Report and Recommendation of United States Magistrate Judge Abbie Crites-Leoni, filed July 28, 2016 (Doc. 41), to whom the case was referred. <u>See</u> 28 U.S.C. § 636(b). The Magistrate Judge recommended that the decision of the Commissioner be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded for further proceedings to permit the Administrative Law Judge ("ALJ") to "determine the total amount that Jefferson has been overpaid and the amount that remains outstanding after collections and other adjustments were made." (Doc. 41 at 10.)

Both parties objected to the Report and Recommendation. Plaintiff filed a document titled "Application of Estoppel" (Doc. 42), in which he states that "the plaintiff asserts an estoppel in this proceeding." <u>Id.</u> at 2. Plaintiff also filed "Plaintiff's Objection to Having Another ALJ to Determine the Total Amount the Plaintiff was Overpaid Due to Action That are Held to be Arbitrary and Capricious as Well as a Violation of the Equal Protection Clause" (Doc. 43). This document

states that "plaintiff objects because of fraudulent actions," id. at 1, and plaintiff moves for summary judgment. Id. at 2.

The Commissioner's objections state that the Report and Recommendation seeks to reverse the agency's decision on the basis that the ALJ failed to provide an analysis of an issue–the circumstances of each of the fourteen overpayments plaintiff received–that the plaintiff never raised in his request for a hearing or at the hearing. The Commissioner concedes that the ALJ's Decision incorrectly stated that the overpayment related to plaintiff's 2009 incarceration amounted to $2,055.17, rather than the correct amount of $674.00, but she contends "an arguable deficiency in opinion writing that has no practical effect on the decision is not a sufficient reason to set aside the ALJ's decision." (Doc. 44 at 3.)

The Court has conducted a de novo review of this matter. For the following reasons, the Court will adopt the Report and Recommendation in part, and will remand this matter to the ALJ for further proceedings as specified herein.

## I.  Procedural History

Plaintiff Elmer Lee Jefferson was initially found entitled to receive Supplemental Security Income ("SSI") benefit payments under Title XVI of the Social Security Act, at some point following his application on December 20, 2001. (R. 27.) The basis for plaintiff's original entitlement to receipt of SSI benefits, and the dates his period of disability and the payment of benefits began, do not appear in the record. It is apparent that the Administrative Record does not contain the entire history of plaintiff's applications for and receipt of SSI benefits.

In April 2009, plaintiff was arrested and was held in jail while awaiting trial.[1]  As discussed more fully below, around the time of his arrest and detention plaintiff wrote numerous letters and filed complaints with the United States Department of Justice and other agencies, and to individuals including the President of the United States and plaintiff's congressional representatives, concerning the circumstances of his arrest and detention, and various claims he made of mistreatment such as excessive force, denial of medical care, and false imprisonment.

On May 18, 2009, the SSA sent plaintiff a Notice of Overpayment, which stated in pertinent part:

> We are writing to let you know that we've paid you $674.00 too much Supplemental Security Income (SSI) money.  The overpayment happened in April 2009.  You were overpaid because you were living in a public institution.
>
> This new overpayment is in addition to the old overpayment already on your record.  You still owe $2,046.02 from the old overpayment.  We have attached to this letter a detailed explanation of your new overpayment.

(R. 448.)

---

[1] "[F]ederal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue."  United States v. Evans, 690 F.3d 940, 943 (8th Cir. 2012) (quoted case omitted).  The Court takes judicial notice of plaintiff's criminal cases in the Circuit Court of Dunklin County, Missouri.  Plaintiff was charged in three cases that were consolidated for trial (O7DU-CR00320, 07DU-CR00323, 07DU-CR01687).  On April 23, 2010, a state court jury found plaintiff guilty of two counts of sale of a controlled substance and resisting arrest.  Plaintiff was sentenced to concurrent prison terms of twelve years on each of the drug sale charges, and a consecutive four-year sentence on the resisting arrest charge, for a total of sixteen years.

Plaintiff appealed and his conviction was affirmed.  State v. Jefferson, 341 S.W.3d 690 (Mo. Ct. App. 2011).  Plaintiff filed a motion to set aside, vacate or correct his sentence under Missouri Supreme Court Rule 29.15, which was denied without an evidentiary hearing.  Jefferson v. State, 10DU-CC00085 (35th Jud. Cir. Ct., Dunklin County, Mo., Jan. 31, 2013).  Plaintiff filed a habeas corpus petition under 28 U.S.C. § 2254 in this Court, related to the Dunklin County convictions, which was denied.  Jefferson v. McSwain, 4:13-CV-542 ACL, 2016 WL 160639 (E.D. Mo. Jan. 14, 2016).  Plaintiff appealed on June 23, 2016, and the federal habeas case is now pending before the Eighth Circuit Court of Appeals.  Jefferson v. McSwain, No. 16-2924 (8th Cir.).

On June 10, 2013, plaintiff reapplied for SSI benefits following his release from incarceration. (R. 32-36, 50.) Plaintiff's disabling conditions are primarily mental impairments: "bi-polar, schizophrenia, anti-social, hears voices, back." (R. 209.) Plaintiff's 2013 SSI application stated among other things that his wife, Ava Jefferson, was employed and owned two life insurance policies. (R. 34-35.) In August 2013, the Social Security Administration ("SSA") asked plaintiff to provide information concerning the life insurance policies, Ava's pay stubs from June 2013 to the then-present time, and direct deposit information. (R. 61.)

Plaintiff provided the requested information. (R. 66-68.) On August 26, 2013, however, plaintiff wrote to Ms. Kara Hubbard of the SSA, complaining that although Ms. Hubbard said information concerning Ava's life insurance policies was needed to determine his eligibility for payments of SSI benefits, plaintiff disagreed:

> The research presented leads me to believe otherwise. The non-payment of SSI benefits for me by the mentioned reasons are unfairly, injuriously, and prejudicially used for non-payment of benefits under SSI. This is the failure to treat me equally; the setting up of arbitrary standard to justify treating me unfairly.
>
> Should you not understand my point of view, please be advised that this incident is an example of reasons why I don't trust people because I get very depressed on such issues.
>
> How can you use a Life Insurance Policy to affect an income when nobody has died and life insurance proceeds are not available? "nor taxable"

(R. 85.) The letter was signed, "Elmer L. Jefferson, 33°, U.S. Representative #1908."

On September 3, 2013, the SSA sent plaintiff a Notice of Award that stated plaintiff was approved for SSI benefits as of June 2013. (R. 87-99.) The Notice stated the amount of plaintiff's monthly payment for October 2013 and the amount of back payments due for July 2013 through September 2013. (R. 87.) Among other things, the Notice also stated:

> As we previously notified you, you were overpaid when you formerly received SSI payments. You must still repay $379.75 from the amount due for July 2013 through September 2013, to reduce the overpayment to $2,340.27.
>
> As we told you before, we are withholding part of your payment to get back money you were overpaid. Starting October 2013, we will start withholding $71.00. Therefore you will receive a payment for $137.50 instead of $208.50.
>
> The $71.00 we will withhold is 10 percent of your SSI money plus any other money we use in figuring your SSI. If you want us to withhold more or less, please call or visit your Social Security office.

(R. 88.) The Notice also discussed "monthly income which must be considered in figuring [plaintiff's] payment," including Ava's income, and the "food or shelter [plaintiff] got from someone." (R. 89.)

Plaintiff filed a Request for Reconsideration on September 5, 2013 which stated in pertinent part:

> I disagree with the determination made on my claims for Social Security Income benefits because I KNOW THAT THE CALCULATIONS USED TO DETERMINE THE AMOUNT OF MY SUPPLEMENTAL SECURITY INCOME (SSI) BENEFITS ARE INCORRECT. THEY DID NOT USE THE CORRECT INFORMATION WHEN FIGURING MY BENEFITS. I AM REQUESTING THAT MY SSI BENEFITS BE RECALCULATED.

(R. 100.) Plaintiff did not offer any specific information as to why the information used by SSA in determining the amount of his SSI benefit was incorrect. Plaintiff's Request for Reconsideration did not mention the stated overpayment or the monthly withholding related to repayment of the overpayment. (Id.).

On September 11, 2013, the SSA sent plaintiff a Notice of Reconsideration which stated in pertinent part, "Someone who did not make the first decision reviewed your case, including any new facts we received, and found that the first decision was correct." (R. 103-105.) The Notice of

Reconsideration concluded, "After reviewing your file, we have determined that the calculation of your SSI benefits is correct." (R. 103.)

On September 30, 2013, plaintiff filed a Request for Hearing by Administrative Law Judge on the September 11, 2013 Notice of Reconsideration for the stated reason, "There is an unresolved issue: See attached." (R. 110.) Plaintiff wrote that his hearing representative's name was Shanette Y. Cutlar.[2] (Id.) At paragraph 15 of the Request for Hearing, which directed that the claimant "check all claim types that apply," plaintiff did not check any boxes concerning SSI, but instead checked "Other - Specify," and wrote "See attached." (Id.)

Plaintiff attached a letter to the Request for Hearing that stated:

> Because I disagree with this decision dated September 11, 2013 and filed September 5, 2013, I'm requesting a hearing in front of an Administrative Law Judge.

> The reasons for this request is due to the attached information connected to the United States Department of Justice.

> The correspondences relate to discrimination against the Missouri Department of Corrections where lawsuits exists [sic] for a denial of appropriate medical care and the Dunklin County Sheriff's Department and to include excessive force, improper booking, illegal restraint, abuse of a chronic care patient and false imprisonment.

> I was granted a grievance approval on state ground with the Missouri Department of Corrections and the Sheriff's Department in Dunklin County Jail was ordered to reconstruct my mouth where my teeth were loosed during the arrest in 2009 and all charges were dismissed where the Dunklin County Sheriff's Department would not provide me medical treatment where an infection set up while being held almost a year.

---

[2]As of August 2009, Ms. Cutlar was the Section Chief of the Special Litigation Section of the U.S. Department of Justice, Civil Rights Division in Washington, D.C. (R. 123.) Some of the inter-agency correspondence discussed below that concerned letters or claims filed by plaintiff were addressed to Ms. Cutlar.

Had these issues been resolved which were referred to the Social Security Administration, the calculation of benefits would not be an issue in dispute.

An injustice anywhere is an injustice everywhere.

Therefore, I'm requesting a hearing before an Administrative Law Judge for resolution.

(R. 111-12).

Attached to plaintiff's letter were numerous documents, including a previous request for hearing plaintiff filed in 2008 concerning an overdraft at Kennett National Bank (R. 113), an undated Appointment of Representative form in which plaintiff sought to appoint Deputy Chief Jeanine Worden of the U.S. Department of Justice, Civil Rights Division, Disability Rights Section, as his representative in connection with a claim under Title II (RSDI) (R. 114); an undated Discrimination Complaint Form under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973 in which plaintiff claimed the United States, the State of Missouri, the City of Kennett, Missouri and Dunklin County committed "trespass to land, false arrest, criminal coercion, denial of appropriate medical care, false imprisonment, attacked while putting cast on neck & denial of due process of law" (R. 116-17); copies of letters between federal agencies or to plaintiff by federal agencies or elected officials in response to correspondence from or claims made by plaintiff in 2008 and 2009 (R. 115, 118-19, 122, 123-24, 125-27); copies of pleadings or documents that plaintiff had filed in several lawsuits, including in this Court; documents that were filed in plaintiff's criminal case or that concern the criminal charges against him; an Offender Grievance plaintiff filed while incarcerated in the Missouri Department of Corrections; and other records from plaintiff's incarceration including medical records (R. 135-62).

Of particular note among the documents attached to the Request for Hearing dated September 30, 2013 was a letter dated June 16, 2009 from Robin C. Deykes, Civil Rights Program Specialist, Disability Rights Section, Civil Rights Division of the U.S. Department of Justice, concerning "Correspondence of Elmer Lee Jefferson" received January 2, 2009. Ms. Deykes' letter was addressed to the Social Security Administration, Office of General Counsel, and letter stated in relevant part:

> We are referring this correspondence to you for appropriate disposition. We have determined that the matter is not within the jurisdiction of our office, but may come under Section 504 of the Rehabilitation Act of 1973 and fall within the jurisdiction of your agency. By copying the claimant, we are advising him/her that future inquiries about this complaint should be directed to the Social Security Administration, Office of General Counsel[.]

(R. 115.) The record does not reveal what correspondence of plaintiff's was the subject of the June 16, 2009 letter.[3]

Plaintiff received several Notices of Change in Payment in October, November and December 2013, which explained that his monthly payments varied based on Ava's changing monthly income. (R. 163-185.) Each of the Notices discussed the $71.00 that would be withheld from each month's payment until the overpayment was paid back.

---

[3]In the Administrative Record, plaintiff's Discrimination Complaint under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 follows the letter of June 16, 2009. (R. at 116-17.) The Court cannot determine whether the Discrimination Complaint was the "correspondence" referred to in Ms. Deykes' June 16, 2009 letter addressed to the SSA's Office of General Counsel. From subsequent documents and plaintiff's statements in writing and to the ALJ at the hearing, it appears plaintiff incorrectly understood Ms. Deykes' letter to mean that all of his complaints and concerns about mistreatment by police, courts, jail personnel, and others would be addressed by the SSA's Office of General Counsel, and indeed by the ALJ. There is nothing in the record to indicate any further action on plaintiff's behalf by the SSA's Office of General Counsel.

On January 14, 2014, the SSA sent plaintiff a letter explaining the hearing process before an ALJ, and informing him of his right to have a representative present. Included with the letter was a list of organizations that might assist plaintiff in obtaining legal help. (R. 186-93.) The SSA's letter stated in part:

> The ALJ will consider the issue(s) you raise, the evidence now in your file, and any additional evidence you provide. The ALJ may also consider other issues, including issues that were decided in your favor in the decision you appealed. <u>The Notice of Hearing will list the issues the ALJ plans to consider at the hearing.</u>
> . . . .
>
> If there is more evidence you want the ALJ to see, please give it to us as soon as possible.

(R. 186-87) (emphasis added). Immediately following the SSA's January 14, 2014 letter in the Administrative Record are seventy-four pages of what appear to be SSA internal records concerning plaintiff. (R. 194-267.)

On March 27, 2014, the SSA sent plaintiff a detailed Notice of Hearing, which set a hearing for May 28, 2014 at the SSA office in Kennett, Missouri. (R. 268-84.) The Notice of Hearing informed plaintiff of his rights to submit more evidence and review his file, and to request subpoenas. (R. 270-71.) Under the heading "Issues I Will Consider" it stated:

> I will decide whether you continue to be disabled. To decide this issue, I will apply the standard stated in section 1614(a)(4) of the Social Security Act. I will consider:
>
> • Whether there has been any medical improvement relating to your ability to work since we last found you disabled; **and**
>
> • Whether one of the exceptions to medical improvement stated in the Act and our regulations applies.
> . . . .

(R. 270-71.)

Strangely, the Notice of Hearing did not state that the ALJ would consider plaintiff's assertion that his SSI benefits had been improperly calculated or the issues set forth in plaintiff's Request for Hearing dated September 30, 2013. Whether plaintiff continued to be disabled or had any medical improvement was not in issue at the hearing.

Plaintiff acknowledged receipt of the Notice of Hearing (R. 284) and according to SSA records "brought in paperwork that he wanted to be associated with his hearing." (R. 285.) This paperwork included an Appointment of Representative form by which plaintiff again sought to appoint Shanette Y. Cutlar as his representative at the hearing (R. 289), interagency correspondence directed to Ms. Cutlar concerning correspondence received from plaintiff (R. 290-92); the docket sheet for plaintiff's § 2254 habeas claim in this Court and documents and correspondence concerning the § 2254 claim; a Dunklin County warrant for plaintiff's arrest issued in March 2009 (R. 293-317, 328-30); and a list of plaintiff's current medications, which included Perphenazine, an antipsychotic medication used to treat schizophrenia, and Hydroxyzine, an antihistamine used to treat anxiety. (R. 318-27.)

On March 31, 2014, plaintiff submitted to the SSA a document titled "Claimant's Request to Issue Subpoenas and Acknowledgement [sic] of Appointment of Representative SSA Publication No. 05-10075 (Right to Representation)." (R. 331-34.) In this document, which plaintiff signed as "Elmer Jefferson, 33°, U.S. Representative," he sought to subpoena Shanette Y. Cutlar on the basis that Ms. Cutlar:

> has evidence or information that reasonably needs to present the Claimant's case fully which she has jurisdiction under Section 504 of the Rehabilitation Act of 1973, as amended, and is requested by Ms. Linda A. Garrett, Civil Rights Program Specialist, Disability Rights Section, Civil Rights Division to investigate the allegations for compliance with both your agency's Section 504 regulations and the Department of Justice's title II regulations, 28 C.F.R. part 35.

Ms. Linda A. Garrett further requested that should she have jurisdiction under title II of the Americans with Disabilities Act of 1990, please investigate the claimant's allegations under the procedures in 28 C.F.R. part 35, subpart f.

(R. 331.)  Plaintiff's Request to Issue Subpoenas also stated:

2. The U.S. Department of Justice has investigated the Claimant's Complaint which consists of money damages that is involved thorough a lawsuit brought for this purpose and it is appropriate for subpoenas to be issued.

3. This case involves addressing Police Misconduct consisting of false arrest, improper booking, excessive force resulting in bodily injury to Claimant, denial of appropriate medical care by the Missouri Department of Correction, Dunklin County Sheriff's Department, Kennett Police Department, writing of false police reports, obstructing justice, concealing records, unlawful incarceration, and contempt of court by the Dunklin County Sheriff's Department.

(R. 332).

Plaintiff requested that the ALJ issue subpoenas to U.S. Representative Jo Ann Emerson; Josh Haynes, Chief of Staff for U.S. Representative Jason Smith; Ms. Judy Preston, Acting Section Chief of the U.S. Department of Justice's Special Litigation Section, Civil Rights Division; Mr. Robert Moossy, Jr., Acting Section Chief of the U.S. Department of Justice's Criminal Section; and Ms. Linda A. Garrett, Civil Rights Program Specialist, Disability Rights Section, Civil Division, on the basis that each of these persons "has information that reasonably needs to present the Claimant's case fully," and referenced letters signed by or sent to these persons in connection with plaintiff's 2009 correspondence and complaints.  (R. 333-34.)

Plaintiff concluded the Request to Issue Subpoenas by stating, "The United States Department of Justice has the power to grant Claimant an award for damages."  (R. 334.)  On May 19, 2014, plaintiff sent the SSA a request to issue subpoenas to three additional individuals with the U.S. Department of Justice, asserting they had evidence of information reasonably needed to present his case at the hearing.  (R. 337.)

Plaintiff also submitted documents from his federal § 2254 habeas case, including a Motion for Default Judgment which asserted that then-Chief Judge Catherine Perry of this Court ordered his case and nineteen others transferred from U.S. Magistrate Judge Lewis M. Blanton to U.S. Magistrate Judge Abbie Crites-Leoni "because of obstruction of justice by Judge [Blanton]." The motion was signed by plaintiff as "Elmer L. Jefferson 33°, A Member of Congress U.S. House of Representatives."[4] (R. 350-57.)

Plaintiff also submitted a letter dated May 3, 2014 that he sent to Mr. Frank Montgomery, Equal Opportunity Specialist at the U.S. Department of Housing and Urban Development ("HUD"), Region VII, Office of Fair Housing and Equal Opportunity in Kansas City, Kansas, concerning "Jefferson v. Housing Authority of the City of Kennett, et al., HUD File No.07-14-03658, Title VI Case No. 07-14-0365-6." (R. 361.) This letter states in pertinent part,

> The purpose of this communication is to request a joinder of action with the Office of Disability Adjudication and review, 200 North Broadway, Suite 900, Saint Louis, Mo 63102. Please find the Notice of Hearing enclosed.
> The reason for joinder of action is provided by law which says that different causes of action may be joined together in the same suit. The separate [sic] injuries usually must arise from the same incident or Controversy which involves Addressing Police Misconduct now before the HONORABLE STEPHEN M. HANEKAMP, ADMINISTRATIVE LAW JUDGE.
> . . . .

(R. 361.)

On May 6, 2014, plaintiff sent a document to SSA titled "Incident Report," in which he stated that approximately an hour after he filed documentation with the SSA concerning his HUD

---

[4]Plaintiff's assertion that Judge Perry ordered cases transferred from Judge Blanton to Judge Crites-Leoni because of judicial misconduct by Judge Blanton is incorrect and lacks any basis in fact. Judge Blanton retired from this Court in 2014 after serving twenty-three years as a United States Magistrate Judge. Upon Judge Blanton's retirement, cases previously assigned to him were transferred to the newly appointed United States Magistrate Judge, Abbie Crites-Leoni.

housing discrimination complaint, he returned home to find three Kennett, Missouri police officers who questioned him about a call that there had been a fight at that location. The "Incident Report" states that plaintiff "took this as intimidation and retaliation for the filing of the complaint . . . ." (R. 363-64.) Plaintiff also submitted to the SSA numerous additional copies of court filings and correspondence related to his federal § 2254 habeas case. (R. 365-402.)

On May 28, 2014, plaintiff and his daughter appeared via video conference before the ALJ for hearing in Kent, Missouri. The ALJ was in St. Louis, Missouri. The ALJ explained how the video hearing would work and that a record of it would be made, and asked plaintiff whether his daughter would testify. Plaintiff responded, "Yeah." (R. 463.) The ALJ said, "[L]et's first of all go over what this is about and then we need to talk about the evidence and I need to find out if you want a postponement to get a representative, okay?" (R. 463-64.) Plaintiff responded that he had filed paperwork about a representative, and the ALJ responded, "Well, I think you're misunderstanding me, sir, so let's hold on and deal with one thing at a time and we'll get to the issue of representation, okay?" (R. 464.)

The ALJ then mentioned plaintiff's hearing request of September 30, 2013 and expressed the ALJ's "understanding that you're contesting an overpayment. The idea is that when somebody is on supplemental security income –" at which point plaintiff interrupted the ALJ and said, "No." (R. 464.) The transcript of the hearing then indicates the ALJ continued to speak as follows:

> ALJ: – if you're a resident of a public institution or in prison you're not eligible for payments and it's my understanding that what you're trying to say is, I should not have an overpayment for time when I was in prison, because I should not have been in prison in the first place. Is that what you were trying to say with the attachment to your hearing request?
>
> CLMT: What I'm – the record like he gave and Social Security and all, I gave them direct evidence that is true and that's why I'm with the Department of Justice. They

have filed and they can better explain that to you than I can and the reason my daughter is here is because I feel a little strange being about myself, being paranoid.

ALJ: All right.

CLMT: One of the disabilities that I do have –

ALJ: Okay. But so, in other words, that is the gist of your hearing request and that's why you filed it, right?

CLMT: Yeah, I gave them the record concerning that they were poor and poor and poor adjusted. And like I said, they didn't give me – when I came and picked up this file, they didn't give me what I have submitted to you in regards to the subpoena people out of Washington and the Chief of Staff there in El Dorado. They're a federal – several things that I feel are very crucial to the case. In other words, that was one of the –

(R. 465-66.)

Plaintiff then stated he did not have a copy of his file, and the ALJ inquired whether plaintiff wanted to postpone the hearing to obtain representation and to see the file before proceeding. The ALJ stated that plaintiff had filed an appointment of representative form naming Shanette Cutlar as his representative, but told plaintiff that Ms. Cutlar "has to sign this form as well and agree to represent you, so I can't recognize her as your appointed representative. But really, the issue is do you want a postponement of your hearing in order to get a representative? You have the right to be represented by an attorney of your choice." (R. 467.) Plaintiff responded, "Yeah, let's postpone." (R. 468.) The ALJ explained to plaintiff that he might be eligible for free legal assistance and that he could send plaintiff another copy of a pamphlet with a list of places he could call to get a referral. (R. 468.)

Plaintiff then told the ALJ about his attempt to obtain representation from the Department of Justice, and said that his complaint had been referred to the General Counsel of the Social Security Administration. (R. 469.) The ALJ responded that he did not have the authority to appoint

14

someone to represent plaintiff, and there was further discussion about how plaintiff might obtain representation. The hearing was concluded after the ALJ cautioned plaintiff that he could only provide one postponement to allow plaintiff to obtain representation. (R. 470-71.)

On July 2, 2014, the SSA sent plaintiff a Notice of Continued Hearing, which set the hearing to resume on September 9, 2014 in Cape Girardeau, Missouri. (R. 405-08.) Attached to the Notice of Continued Hearing was a "Your Right to Representation" form (R. 409-11), and a letter from the ALJ to a Mr. Darrell W. Taylor. This letter stated that plaintiff "has an application pending for disability benefits" and that Mr. Taylor was requested to appear at the September 9, 2014 hearing and give testimony as a vocational expert for the period of the "alleged onset date through the present."[5] (R. 412-15.)

On August 18, 2014, plaintiff sent a letter to the SSA complaining that SSA rules on hearing witnesses, federal regulations concerning presenting evidence before an ALJ, and regulations concerning issuing subpoenas at the request of a claimant had been violated in his case. (R. 416-23.)

On September 9, 2014, the hearing resumed. Plaintiff appeared in person and with his wife, Ava, for a video hearing with the ALJ. The record does not indicate that the vocational expert was present. The ALJ remarked that the hearing had been postponed to allow plaintiff to get a representative, but observed that plaintiff was still unrepresented, and said, "I assume that you want to go ahead without representation." Plaintiff gave a rambling and disjointed response that was irrelevant to the issue of his SSI benefits. (R. 476-78.)

---

[5]It is unclear why a vocational expert would be needed at a hearing to address the issues raised in plaintiff's Request for Hearing. Contrary to the statement contained in the ALJ's letter to the vocational expert, plaintiff was not applying for disability benefits, as he had already been found eligible to receive SSI benefits and instead was contesting the calculation of those benefits.

The ALJ then placed plaintiff under oath and stated,

> ALJ: All right.  Okay.  All right.  Then, all right, sir, all right, let me first of all go over why we are her[e].  <u>Basically the Social Security Administration declared an overpayment of *approximately $3,100 because you were incarcerated* and in any</u> event, they are withholding some money from your monthly check in order to recoup that overpayment and you filed you hearing request on – my understanding is basically two issues.  <u>Number one, you're saying that you should not have been incarcerated, if you had not been incarcerated then there would not be an overpayment</u>.  And then *<u>second of all, the withholding amounts, you disagree with the withholding amounts</u>*.  So, you shook your head yes and pardon me.  And so, in any event, that's why we're here.  So that's the issue.  Then let me just go over what we have in evidence.  . . . .

(R. 479-80) (emphases added).  The ALJ admitted various documents into evidence that plaintiff had submitted and said to plaintiff, "So basically I've given you the oath, sir, and I've set aside 45 minutes for this hearing, so this is your time to tell me what you want to say."  (R. 481.)  Plaintiff responded by giving a lengthy, rambling narrative that did not address the issue of his SSI benefits.  (R. 481-84.)  The ALJ asked if there was anything else plaintiff needed to tell him, and plaintiff responded, "This [inaudible] what else you need to know?  I mean, I was just speaking from my heart."  (R. 484.)

The ALJ then asked if Ava Jefferson wanted to testify, and asked her if she had anything she needed to tell him.  Mrs. Jefferson responded, "Not at this moment I don't."  (R. 485.)  The ALJ offered plaintiff the opportunity to ask Mrs. Jefferson questions, and plaintiff asked her, "Do you still feel threatened by law enforcement?" and "Do you still feel that they might take our lots?" to which she responded, "Yeah."  (R. 485.)  The hearing concluded and the ALJ said he would issue a decision as soon as possible.

**II. The ALJ's Decision**

The ALJ issued his Decision on November 7, 2014. The Decision stated that the sole issue was "whether Mr. Jefferson was overpaid Supplemental Security Income while in jail and incarcerated." (R. 16.) The ALJ's Decision did not address the second issue he identified at the hearing, that plaintiff disagreed with the withholding amounts. (R. 480.) The ALJ stated at the beginning of the Evaluation portion of the Decision, "The claimant does not dispute that he received payments in the amount of $2,055.17 (D-27) while he was incarcerated." (R. 16.) This statement is factually incorrect, and forms the primary basis of plaintiff's appeal to this Court.

The Decision continues:

> [Plaintiff's] argument, however, is that he was unjustly and wrongfully imprisoned, and therefore he was not overpaid. In other words, he argues that had he not been unjustly and wrongfully incarcerated, then he would have been living at home during the time period in question and he would have been eligible for the Supplemental Security Income payments in issue, and for that reason he should not have an overpayment. The claimant has made a number of motions in support of this argument, and attempting to join numerous parties to the case for the purpose of adjudicating, at the Office of Disability Adjudication and Review, the issue of whether he should have been incarcerated. . . . .

(R. 16).

The ALJ's Decision addressed the various documents plaintiff submitted for inclusion in his SSA file, including the correspondence to federal agencies, court documents, motions, complaints about police misconduct and various exhibits as detailed above. The ALJ stated that none of the complaints were "filed within any jurisdiction that come under the authority of the undersigned," in particular plaintiff's claims that were raised in or concerned the federal courts. (R. 17.)

The ALJ stated that while plaintiff filed an SSA Form 1696 naming Shanette Cutlar as his representative, Ms. Cutlar had not signed the form and therefore had not entered an appearance as

plaintiff's attorney. The ALJ stated that while plaintiff had attempted to compel Ms. Cutlar to appear at his disability hearing for the purpose of representing him as his counsel in his non-disability claim, the ALJ lacked the authority to compel any person or official to represent another in Social Security Proceedings. (R. 17.)

The ALJ's Decision then addressed the sole issue he considered: whether plaintiff was overpaid SSI "considering his allegations of unjust or illegal detention in a public facility." (R. 17.) The ALJ correctly stated that under federal regulations, individuals are not eligible for SSI benefits for any month throughout which the individual is a "resident of a public institution," 20 C.F.R. 416.211(a), (R. 17), and under 20 C.F.R. 416.201 a "'public institution' is defined as an institution that is operated by or controlled by the Federal government, a State, or a political subdivision of a State such as a city or county. This definition includes all jails and prisons." (R. 18.) "'Resident of a public institution' is further defined as a person who can receive substantially all of his or her food and shelter while living in a public institution, and it is specifically stated that '[a] *resident* of a public institution means the same thing as an *inmate* of a public institution.' See 20 CFR 416.201." (R. 18).

The ALJ noted the regulations make exceptions to this general rule for residents of public institutions that are (1) medical treatment facilities, (2) public emergency shelters for the homeless, and (3) publicly operated community residences, which are specifically defined to not be a "jail or other facility where the personal freedom of anyone who lives there is restricted because that person is a prisoner, being held under court order, or is being held until charges against that person are disposed of. See 40 CFR 416.211(b) through (d), and 20 CFR 416.211(c)(5)(iii)." (R. 18.) The ALJ then stated that plaintiff was not a resident of a medical treatment facility, a public emergency

shelter for the homeless, or a publicly operated community residence during the period in issue. (R. 18.)

The ALJ concluded plaintiff's argument, that he should not have an SSI overpayment for months during in which he was wrongfully incarcerated or imprisoned, must fail in light of the clear requirements of the applicable regulations. (R. 18-19.)

## III. The Appeals Council's Review and Decision

Plaintiff filed a Request for Review of Hearing Decision/Order that stated plaintiff sought review of the ALJ's decision on his claim because: "In his Evaluation it is stated that I did not dispute that I received payments in the amount of $2,055.17 (D-27) while in jail and incarcerated that is filed by him in bad faith." (R. 12.) Plaintiff attempted to name Congressman Jason Smith as his hearing representative. At the bottom right corner of the Request for Review is a hand-written notation "1 of 3." Only one page of the Request for Review is provided in that portion of the Administrative Record, however. It appears that the second and third pages of plaintiff's Request for Review may be included in the Administrative Record at pages 427-28, which are titled "Response Statement." In the Response Statement, plaintiff asserts that the ALJ's Decision was made in bad faith, and that plaintiff

> is hearing about this allegation of receiving $2,055.17 for the first time and don't know anything about receiving such funds while incarcerated. I don't have such a record of this allegation so why would I dispute an issue unheard of except at this time? . . . This is a lie and there is no truth about $2,055.17 being received by me while incarcerated. I want to see such information linking me to that.

(R. 427.)

Plaintiff also states that as soon as he was incarcerated, he reported his detention to the Manager of the Social Security Administration in Kennett, Missouri.  (R. 428.)[6]

Finally, plaintiff stated that the ALJ "is saying that the Honorable Jason Smith Congressman and the United States Department of Justice, Disability Rights Section, Civil Rights Division are mistaken about his duties and the referral to Social Security Administration in his department is without jurisdiction to act on the claims of claimant."  (R. 428.)

On May 14, 2015, the Appeals Council denied plaintiff's Request for Review.  The Appeals Council stated:

> You contend that you reported your incarceration timely to the Administration.  You also contend that the amount of $2,055.17 was falsely entered into your file.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> The Appeals Council notes that you submitted a request for waiver of the overpayment with your request for appeal.  We plan to return your case to your local field office for an initial determination on your waiver request as well as any other necessary action for your case.  You will receive appeals rights with your initial determination regarding your request for waiver.
>
> With your request for review, you alleged that the Administrative Law Judge was "bias and this appears to be a whim of those in power."  We considered your allegations solely as they relate to your case under the abuse of discretion standard 416.1470.  After reviewing the entire record, including the hearing recording, we have determined that there was no abuse of discretion and that no other basis exists to grant review in this case.  We have completed our action on your request for review.

---

[6]Plaintiff sent a letter to the Appeals Council dated December 3, 2014, in which he sought to subpoena records for "PROOF OF PAYMENT OF OVERPAYMENT WHILE CLAIMANT ELMER LEE JEFFERSON was resident of a public institution during the time that the OVERPAYMENT OCCURRED."  (R. 430.)  Plaintiff also filed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate form, challenging the statement that he received $2,055.17 while incarcerated.  (R. 433-40.)

(R. 4-8.)  The decision of the ALJ therefore stands as the Commissioner's final decision.  <u>See</u> 20 C.F.R. §§ 404.981, 416.1481.

## IV.  Plaintiff's Action in this Court

Plaintiff filed the instant case asserting that he had evidence an overpayment of $2,055.17 did not occur while he was incarcerated, which was the reason money was being deducted from his monthly check.  (Amended Complaint at 2) (Doc. 6).  Plaintiff alleges that SSA employees acted fraudulently in concealing the "actual reason" for deductions from his monthly SSI payments, and retaliated against him for filing grievances against the SSA.  (<u>Id.</u>)  Plaintiff's pro se Brief in support of his complaint asserts that ALJ's Decision is not supported by substantial evidence because there is no evidence plaintiff received payment of $2,055.17 while he was incarcerated.  (Doc. 30.)

The Commissioner's Brief asserts that the only issue raised in the ALJ's Decision was whether plaintiff received an overpayment of benefits in 2009 when he was incarcerated.  (Doc. 32 at 3.)  The Commissioner argues that the ALJ correctly determined plaintiff was not eligible for SSI benefits while incarcerated in a public institution, citing 20 C.F.R. §§ 416.201, 416.211, and 416.1325.  (<u>Id.</u> at 4.)  The Commissioner states that while plaintiff argued he was improperly incarcerated without probable cause, the ALJ correctly noted this issue was outside of his jurisdiction and whether plaintiff was found guilty of the charge for which he was incarcerated was irrelevant to the determination whether he was a resident of a public institution and thus ineligible to receive SSI benefits.  (<u>Id.</u> at 4-5.)  The Commissioner devotes a substantial portion of her Brief to attempting to establish that plaintiff was incarcerated in 2009, a fact plaintiff has never disputed.

The Commissioner admits that plaintiff's Brief "could also be construed as challenging the computation of his overpayment amount."  (<u>Id.</u> at 6.)  The Commissioner contends this argument

should be rejected because plaintiff "has offered no specific argument how the amount of the overpayment as determined by the agency was incorrect." (Id. at 6-7).

After the parties filed their Briefs, the Magistrate Judge ordered the Commissioner to provide an SSA Notice of Overpayment or other documentation concerning the $2,055.17 at issue, stating that without such documentation, the Court was "unable to determine whether the decision of the ALJ was supported by substantial evidence." Order of July 19, 2016 at 2. (Doc. 38). The Commissioner filed a Response which included the following exhibits:

1. A May 18, 2009 Notice of Overpayment in the amount of $674.00 for April 2009 that explained plaintiff was overpaid because he was a resident of public institution in April 2009, and that plaintiff had previously received overpayment, and the amount of the old overpayment still pending was $2,046.02. (Doc. 39, Ex. A.) This document was already part of the Administrative Record.

2. A December 16, 2013 Notice of Overpayment that informed plaintiff he had incurred a new overpayment of $25.34 as a result of an increase in his wife's wages, and that he had an old overpayment in the amount of $2,055.17 still pending. (Doc. 39, Ex. B.) This document was already part of the Administrative Record.

3. A spreadsheet generated by SSA's "accounting software outlining the amount of Plaintiff's monthly SSI benefit payment, the amount he should have been paid, the amount of overpayment, if any, and the amount of any overpayment collection beginning in 1996 and running through May 2016."[7] (Doc. 39 at 2; and Ex. C.)

---

[7]The spreadsheet generated by the SSA's accounting software was new evidence not contained in the Administrative Record. "In the context of judicial review of a decision of the Commissioner regarding SSI disability benefits, evidence outside the administrative record generally

The Magistrate Judge carefully reviewed the Commissioner's Exhibit C and found that it indicated the following with respect to overpayments:

> [Plaintiff] received a total of **$5,465.27** in overpayments between July 1999 and April 2009 ($3,565.68 during periods of incarceration and $1,899.59 for "other" reasons). If the total amount of overpayments between July 1999 and April 1999 ($5,465.27) is subtracted from the collections made between April 2003 and January 2014 ($3,410.10), the difference is **$2,055.17**.

Report and Recommendation at 6. The Magistrate Judge stated there was no doubt any funds plaintiff received while he was incarcerated constitute an overpayment, citing 20 C.F.R. § 416.211(c)(5)(iii), but noted plaintiff did not dispute this, or the fact that he was incarcerated in 2009. The Magistrate Judge stated that plaintiff's actual argument on appeal is that he was not overpaid in the amount of $2,055.17 <u>while he was incarcerated in 2009,</u> and that the Commissioner has not provided any proof of such overpayment while he was incarcerated.

The Magistrate Judge remarked that while the ALJ acknowledged at the administrative hearing that plaintiff disagreed with the overpayment amounts, the ALJ failed to address this argument in his Decision, did not include any discussion regarding how the $2,055.17 was determined, or cite to any documentary evidence in support of the overpayment amount, and the Magistrate Judge could not find any documents in the Administrative Record to explain how the amount was computed. The Magistrate Judge concluded that the ALJ's Decision was not supported by substantial evidence in the record as a whole, for the following reasons:

> The ALJ's opinion is fundamentally flawed, in that it provides no explanation as to how the overpayment amount was calculated. Although the decision provides no

---

is precluded from consideration by the court." <u>Baker v. Barnhart</u>, 457 F.3d 882, 891 (8th Cir. 2006) (cited cases omitted). Also, in reviewing the record for substantial evidence, the court may not make its own findings of fact. <u>See</u> <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987); <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150 (8th Cir. 1984).

dates, it is clear that the ALJ found the overpayment occurred during a period of incarceration. Defendant confirms in her Brief that the only issue raised in the ALJ's decision was whether Jefferson received an overpayment of SSI benefits in 2009 when he was incarcerated. Despite this narrow issue, neither the ALJ nor Defendant cite to any documentary evidence showing that Jefferson in fact received $2,055.17 while he was incarcerated in 2009. The only evidence of an overpayment that occurred during the relevant time frame is a Notice of Overpayment dated May 18, 2009, reflecting that Jefferson was overpaid in the amount of $674 while he was incarcerated in April 2009. (Tr. 448.)

When given the opportunity to provide documentation that the undersigned assumed was inadvertently omitted from the record, the Acting Commissioner provided a spreadsheet generated by the agency. This is not sufficient evidence to support the ALJ's determination for several reasons. First, there is no indication that Jefferson has ever received this internal document. Second, the document does not indicate that Jefferson was overpaid $2,055.17 while he was incarcerated in 2009. Rather, it reveals that Jefferson was only overpaid in the amount of $674 during that time. Third, although Exhibit C indicates that the difference between Jefferson's total amount of overpayments between July 1999 and April 2009 and the amounts recovered by the SSA equals $2,055.17, there is no explanation as to how the overpayment determinations were made with regard to fourteen of these overpayments. The undersigned is therefore unable to determine whether the SSA properly determined Jefferson was overpaid on those fourteen occasions. In any event, it is clear that these overpayments were not the result of Jefferson's 2009 incarceration, nor were they the result of any incarceration.

Report and Recommendation at 9-10.

## V. Legal Standard

The Commissioner's decision must be affirmed if it "is supported by the substantial evidence on the record as a whole." Ash v. Colvin, 812 F.3d 686, 689 (8th Cir. 2016) (quoted case omitted); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance [of the evidence], but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. (quoted case omitted). To determine whether substantial evidence exists, courts "consider evidence that supports the Commissioner's conclusion, along with evidence that detracts from that conclusion." Id. (quoted case omitted). The substantial evidence test is "more than a mere search

of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoted case omitted). "[T]he ALJ has a duty to develop facts fully and fairly, especially in a case where the claimant is not represented by counsel." Reeder v. Apfel, 214 F.3d 984, 987 (8th Cir. 2000). Remand is appropriate where the ALJ fails to consider or discuss a crucial issue or evidence. See, e.g., Vossen, 612 F.3d at 1016-17 (remand required where ALJ failed to develop the record to determine the authenticity of an unsigned report from the Commissioner's consultative physician); Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) (remand required because ALJ failed to make adequate findings with regard to non-treating psychologist's opinion).

## VI. Discussion

As stated above, plaintiff filed an Application of Estoppel and an Objection to the Report and Recommendation, which states that "plaintiff objects because of fraudulent actions." The Commissioner objected to the Report and Recommendation arguing that it seeks to reverse the agency's decision on the basis that the ALJ failed to provide analyze an issue–the circumstances of each of the fourteen overpayments plaintiff received–that plaintiff never raised in his request for a hearing or at the hearing. The Commissioner concedes that the ALJ's Decision incorrectly stated the overpayment related to plaintiff's 2009 incarceration was $2,055.17, rather than the correct

amount of $674.00, but contends "an arguable deficiency in opinion writing that has no practical effect on the decision is not a sufficient reason to set aside the ALJ's decision." (Doc. 44 at 3.)

The Supreme Court has held that a Social Security claimant need not exhaust issues in a request for review to the Appeals Council in order to preserve judicial review of those issues. Sims v. Apfel, 530 U.S. 103, 112 (2000). The Eighth Circuit has held similarly. In Harwood v. Apfel, 186 F.3d 1039 (8th Cir. 1999), the Court rejected the Commissioner's argument that the claimant forfeited issues not raised before the Appeals Council: "Although a party seeking judicial review of an agency action must generally exhaust available agency remedies and may not generally proceed upon an argument not made to the agency, the general rule makes little sense in [the social security] context." Id. at 1042 (internal citation omitted). "The Appeals Council routinely considers arguments not specifically raised by claimants before it–a product of its duty to review an ALJ's decision 'in an informal, nonadversary (sic) manner' and a fitting analogue to the ALJ's well-established duty to develop a full and fair record[.]" Id. See also Fisher v. Colvin, 2014 WL 859157, *3 (D. Minn. 9 Mar. 5, 2014) ("because the point of any judicially-imposed issue exhaustion requirement would be to ensure that the agency has an opportunity to address an issue that is within its area of expertise, it would [be] odder still to preclude [the claimant] from arguing the issue in these circumstances, where the ALJ affirmatively recognized and addressed the issue in the decision that is on review.") (internal citation omitted).

This Court generally decides appeals under the Social Security Act by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to the grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error. See Jain v. CVS Pharmacy, Inc., 779 F.3d 753, 758-59 (8th Cir. 2015). But a reviewing court may not, on the

other hand, "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." Bridges v. Gardner, 368 F.2d 86, 90 (5th Cir. 1966).

A court's duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable and whether the ALJ applied correct legal standards to the evidence is especially important because "unlike the typical judicial proceeding, a social security disability case is nonadversarial[.]" Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citing 20 C.F.R. § 404.944 (requiring the ALJ to "look[ ] fully into the issues")). See also Frith v. Celebrezze, 333 F.2d 557, 561 (5th Cir. 1964) (reversing sua sponte upon observing that the hearing examiner failed to address and resolve crucial factors); Litzsinger v. Astrue, 2008 WL 420033, at *6 (D. Colo. Feb. 13, 2008) (finding sua sponte that the ALJ erred in assessing plaintiff's RFC); Szczecina v. Astrue, 2008 WL 216379, at *7 (D. Colo. Jan. 24, 2008) (considering issue of acceptable medical sources sua sponte); Gravel v. Barnhart, 360 F.Supp.2d 442, 453 (N.D.N.Y. 2005) (court sua sponte notes that additional deficiencies in the ALJ's decision warrant remand).

In her objections to the Magistrate Judge's Report and Recommendation, the Commissioner concedes that the ALJ's Decision incorrectly stated that the April 2009 overpayment amounted to $2,055.17 instead of the correct amount, $674.00, but contends that "an arguable deficiency in opinion writing that has no practical effect on the decision is not a sufficient reason to set aside the ALJ's decision." (Doc. 44 at 3.) It is true that "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotations omitted). In this

case, however, the foregoing error and the other errors the ALJ made cannot be attributed to a mere deficiency in opinion writing, and it certainly cannot be said that the ALJ's errors had no practical effect on the outcome of the case.

While an ALJ ordinarily has no obligation to investigate claims not presented at time of application or not offered at hearing, <u>Sullins v. Shalala</u>, 25 F.3d 601, 605 (8th Cir. 1994), the ALJ in this case expressly recognized that plaintiff was challenging <u>both</u> the amount withheld due to his incarceration <u>and</u> the amounts withheld from his benefits, as he specifically stated:

> Number one, you're saying that you should not have been incarcerated, if you had not been incarcerated then there would not be an overpayment. And then second of all, the withholding amounts, you disagree with the withholding amounts.

(R. 479-80.) The ALJ then noted that plaintiff shook his head yes. (<u>Id.</u>) In his decision, however, the ALJ focused solely on the first issue: whether plaintiff was overpaid SSI considering his allegation that he was wrongfully imprisoned. The ALJ failed to expressly state that he had considered other adjustments the SSA made to plaintiff's benefits, even though any such adjustments would have been clearly relevant to the withholding amounts, the second hearing issue the ALJ expressly recognized. The ALJ's failure to state in his opinion that he had considered other adjustments leaves the Court unsure whether the ALJ considered other adjustments and determined that the withholding amounts were correct, or whether he failed to consider them at all. Also, the ALJ stated that plaintiff did not dispute that he received $2,055.17 while incarcerated, a statement that was factually incorrect.

The ALJ should have developed the record by asking plaintiff about the facts underlying his disagreement with the withholding amounts, and he should have considered other adjustments made to plaintiff's benefits to determine whether the withholding amounts were correct. The

administrative hearing is a non-adversarial proceeding, see Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994), and the Eighth Circuit has recognized that the "ALJ has a duty to develop facts fully and fairly, and this duty is enhanced when the claimant is not represented by counsel." Cox v. Apfel, 160 F.3d 1203, 1209 (8th Cir. 1998); accord Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002); see also Ventura v. Shalala, 55 F.3d 900, 901-02 (3d Cir. 1995) (the ALJ "has an affirmative obligation to actually assist the claimant in developing the facts.") (quoted case omitted).

On remand, the ALJ should develop the record fully and fairly in accordance with this Memorandum and Order. The ALJ should consider facts and evidence relevant to the calculation of plaintiff's SSI benefits, including but not limited to any overpayments plaintiff may have received. The ALJ's decision should clearly set forth the facts and evidence that were considered in reaching the decision, and clearly explain the reasoning behind the decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Court will **adopt** the Report and Recommendation of the United States Magistrate Judge in part, to the extent that it recommends remand of this matter, but will remand with directions for the ALJ to develop the record fully and fairly with respect to plaintiff's challenge to the calculation of his SSI benefits as set forth herein. [Doc. 41]

**IT IS FURTHER ORDERED** that the parties' objections to the Report and Recommendation are **OVERRULED** and plaintiff's "Application of Estoppel" and request for summary judgment are **DENIED**. [Doc. 42]

**IT IS FURTHER ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this Memorandum and Order.

An appropriate judgment of remand will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  28th  day of September, 2016.